FILED
CLERK
2/15/2019 3:40 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JOHN MCNEIL,

For Online Publication Only

        Plaintiff,

**MEMORANDUM & ORDER**
17-CV-04070 (JMA)

  -against-

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.
----------------------------------------------------------------X

**APPEARANCES**

    Jeffrey D. Delott
    Law Offices of Jeffrey Delott
    366 North Broadway
    Suite 410
    Jericho, NY 11753
    *Attorney for Plaintiff*

    Arthur Swerdloff
    United States Attorney's Office, EDNY
    271 Cadman Plaza East
    Brooklyn, NY 11201
    *Attorney for Defendant*

**AZRACK, United States District Judge:**

Plaintiff John McNeil ("Plaintiff") seeks review of the final determination by the Commissioner of Social Security (the "Commissioner"), reached after a hearing before an administrative law judge ("ALJ"), denying Plaintiff disability insurance benefits under the Social Security Act. The case is before the Court on the parties' cross-motions for judgment on the pleadings. For the reasons discussed herein, Plaintiff's motion for judgment on the pleadings is GRANTED in part and DENIED in part, the Commissioner's cross-motion is DENIED, and the case is REMANDED for proceedings consistent with this opinion.

# I. BACKGROUND

## A. <u>Procedural History</u>

In May 2014, Plaintiff filed for disability insurance benefits with the Social Security Administration ("SSA"), alleging disability as of February 14, 2014 due to heart and back conditions. (See Tr. 103, 169–70, 180, 183.[1]) Following denial of his claim, Plaintiff requested, and appeared with his attorney for, an administrative hearing before ALJ Andrew S. Weiss ("ALJ Weiss") on February 17, 2016. (Tr. 36–95.)

In a decision dated March 8, 2016, ALJ Weiss denied Plaintiff's claim, finding that he was not disabled for purposes of receiving disability insurance benefits under the Social Security Act. (Tr. 17–32.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on June 29, 2017. (Tr. 1–7.) This appeal followed.

## B. <u>Factual Background</u>

In light of the Court's decision to remand this case for further proceedings, the Court recounts only the evidence relevant to that determination.

Plaintiff suffered from a heart attack in February 2005, and then had two additional stents placed in May 2011 and September 2012. (Tr. 43–44, 274–84, 383–84, 389–90.) He also testified that he has had "a back condition" since May 2008. (Tr. 42–43.) However, Plaintiff worked as a receiving inspector, placing labels on products, from October 1998 until he was let go in February 2014. (Tr. 41–42, 184.) He testified that he believes he was let go for taking excessive time off because of his heart condition, after he had the second stent placed in May 2011. (Tr. 42–44, 50.) And, Plaintiff said the main reason he cannot work is because of his heart—he testified that he fatigues very easily and gets short of breath which sometimes leads to heart palpitations. (Tr. 43.)

---

[1] Citations to "Tr." refer to pages of the certified administrative record filed by the Commissioner. (ECF No. 24.)

Plaintiff's medical records include hospital records from his heart attack and two stent placements; records from his cardiologist, Dr. James A. Colasacco, M.D. from 2009 through 2014; an MRI of his back dated July 7, 2014; and two treatment records from Dr. Andrea S. Colander, D.O., who treated Plaintiff's back, in March and July 2014. (Tr. 274–410.)

Dr. Colasacco submitted a "Cardiac Impairment Questionnaire," opining on Plaintiff's functional limitations. (Tr. 415–17.) Dr. Colasacco indicated that Plaintiff was a "NYHA III" patient, meaning he is comfortable at rest, but less than ordinary activity causes fatigue.[2] (Tr. 415.) He further opined that Plaintiff has various physical limitations that would preclude even sedentary work activity, together with several postural and environmental limitations. (Tr. 416.) The Questionnaire represents that all these limitations were present from April 2005, when Dr. Colasacco first began treating the Plaintiff. (Tr. 415–17.)

There is also a "Treating Source Statement" from Dr. William Weibke, D.C., Plaintiff's chiropractor, dated December 16, 2014, together with a letter dated January 1, 2016 (Tr. 411–14, 430.) Dr. Weibke indicated that he has treated Plaintiff two to three times a month since May 2008 and opined that Plaintiff has various functional limitations due to his back impairment. (Tr. 411–14.) However, there are no treatment notes from Dr. Weibke to corroborate his opinion.

Dr. Steven Shilling, M.D., who has a specialty in cardiovascular disease, did not examine Plaintiff, but reviewed his medical records and testified at the administrative hearing. (Tr. 55–83, 431–34.) Dr. Shilling primarily testified about the results of Plaintiff's objective medical tests, and based on his review of the record, Dr. Shilling opined that Plaintiff would not have limitations lifting, sitting, standing, or walking. (Tr. 57–59.) He specifically disagreed with Dr. Colasacco's classification of Plaintiff as a "class III" patient, given the results of Plaintiff's most recent stress

---

[2] See Classes of Heart Failure, American Heart Association, https://www.heart.org/en/health-topics/heart-failure/what-is-heart-failure/classes-of-heart-failure.

3

test.[3]  (Tr. 80.)

A vocational expert, Jeff Astites (the "VE") also testified at the administrative hearing. (Tr. 85–90.)  He indicated that Plaintiff's past relevant work was as a "Labeler," is listed as a light exertional job in the Dictionary of Occupational Titles ("DOT"), but it might have been a medium exertion job as Plaintiff actually performed it.  (Tr. 85–86.)  The VE opined that an individual with the same age, education, and work experience as Plaintiff, who could lift ten to twenty pounds, could perform Plaintiff's past work as a Labeler as it is performed in the general economy.  (Tr. 86–88.)  He determined that this would be true even if the individual could only occasionally be around cold weather, pulmonary irritants, and hazardous machinery.  (Tr. 88.)

## C. The Commissioner's Decision

ALJ Weiss applied the five-step process required by the SSA's regulations, described below, and denied Plaintiff's application for benefits.  (Tr. 20–32.)  ALJ Weiss first indicated that Plaintiff meets the insured status requirements and has not engaged in substantial gainful activity since his alleged onset set.  (Tr. 24.)  Next, at step two, he found that Plaintiff had a severe impairment of "ischemic heart disease," but that Plaintiff's back condition was not severe.  (Tr. 24–25.)  At step three, ALJ Weiss determined that Plaintiff's impairments, alone or in combination do not meet or medically equal the severity of any listed impairments.  (Tr. 25–26.)

ALJ Weiss then addressed step four, first determining Plaintiff's residual functional capacity ("RFC").  He indicated that the medical opinion of Plaintiff's cardiologist was "less persuasive" because Dr. Colasacco suggested that the limitations he placed on Plaintiff were present since April 2005, but Plaintiff engaged in substantial gainful work activity between 2005

---

[3] On cross-examination, Dr. Shilling testified about his professional misconduct, his government contractor work, and that he no longer sees patients.  (Tr. 66–75.)  Plaintiff raised these points in his moving papers as part of his argument that the weight ALJ Weiss granted to Dr. Shilling's opinion was improper, but they are not particularly relevant to the Court's analysis.

4

and February 2014. (Tr. 27–28.) ALJ Weiss further detailed how Dr. Colasacco's treatment notes do not support his opinion that Plaintiff had severe functional limitations. (Tr. 28–29.) ALJ Weiss then accorded "great weight" to the assessment of the non-examining medical expert Dr. Shilling because he reviewed the entire record and his interpretation of the most recent tests were consistent with the conclusions on the reports. (Tr. 29.) ALJ Weiss also considered Plaintiff's testimony and the testimony of his husband regarding Plaintiff's daily activities and subjective complaints of pain, finding that the complaints did not warrant a more limiting RFC. (Tr. 26–27, 30–31.)

Ultimately, ALJ Weiss concluded at step four that Plaintiff had an RFC to perform the full range of light work and thus, based on the testimony of the VE, Plaintiff could perform his past relevant work as a "Labeler" as it is generally performed. (Tr. 26–31.) Accordingly, ALJ Weiss found that Plaintiff was not under a disability as defined in the Social Security Act from February 14, 2014 through the date of his decision. (Tr. 31–32.)

Plaintiff timely filed a request that the Appeals Council review ALJ Weiss's decision (Tr. 6–7.) As part of this request, Plaintiff submitted two pieces of evidence: (1) treatment records from Dr. Colasacco dated March 10 and 16, 2016 (including a diagnostic METs test); and (2) a letter from Dr. Colasacco dated April 27, 2017. (Tr. 8–16.) In denying Plaintiff's request for review, the Appeals Council indicated that Dr. Colasacco's letter refers to the period at issue, but "does not show a reasonable probability that it would change the outcome of the decision." (Tr. 2.) The Appeals Council then stated that the March 2016 records from Dr. Colasacco post-date ALJ Weiss's March 8, 2016 decision and thus do not relate to the period at issue. (Id.)

## II. DISCUSSION

### A. Social Security Disability Standard

Under the Social Security Act, "disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

5

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled when his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

The Commissioner's regulations set out a five-step sequential analysis by which an ALJ determines disability. 20 C.F.R. § 404.1520. The analysis is summarized as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008) (second alteration in original) (quoting Green–Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)). As part of the fourth step, the Commissioner determines the claimant's RFC before deciding if the claimant can continue in his or her prior type of work. 20 C.F.R. § 404.1520(a)(4)(iv). The claimant bears the burden at the first four steps; but at step five, the Commissioner must demonstrate "there is work in the national economy that the claimant can do." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009); see also Campbell v. Astrue, No. 12-CV-5051, 2015 WL 1650942, at *7 (E.D.N.Y. Apr. 13, 2015) (citing Melville v. Apfel, 198 F.3d 45, 51 (2d Cir. 1999).

B. **Scope of Review**

In reviewing a denial of disability benefits by the SSA, it is not the function of the district court to review the record *de novo*, but instead to determine whether the ALJ's conclusions "'are supported by substantial evidence in the record as a whole, or are based on an erroneous legal

standard.'" Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quoting Beauvoir v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997)). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "'To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Thus, the Court will not look at the record in "isolation but rather will view it in light of other evidence that detracts from it." State of New York ex rel. Bodnar v. Sec. of Health and Human Servs., 903 F.2d 122, 126 (2d Cir. 1990). An ALJ's decision is sufficient if it is supported by "adequate findings . . . having rational probative force." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

Conversely, a remand for further proceedings is warranted in cases where the Commissioner has failed to provide a full and fair hearing, to make sufficient findings, or to have correctly applied the law and regulations. See Rosa v. Callahan, 168 F.3d 72, 82–83 (2d Cir. 1999); see also 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").

**C. Analysis**

Plaintiff argues that remand for calculation of benefits is warranted because ALJ Weiss's RFC analysis is not supported by substantial evidence. Specifically, Plaintiff claims ALJ Weiss failed to (1) properly weigh Plaintiff's treating physician opinion; and (2) properly assess Plaintiff's credibility when determining the RFC. Plaintiff also argues that his case should be

remanded for further proceedings based on two alleged procedural flaws: (1) that he was denied a full a fair hearing because the Appeals Council did not consider evidence submitted after ALJ Weiss's decision; and (2) that ALJ Weiss erred in determining at step two that Plaintiff's back impairment wasn't severe. The Court finds that ALJ Weiss's RFC analysis is not supported by substantial evidence and remands this case for further proceedings consistent with this opinion.

An RFC determination specifies the "most [a claimant] can still do despite [the claimant's] limitations." Barry v. Colvin, 606 F. App'x 621, 622 n.1 (2d Cir. 2015) (summary order); see Crocco v. Berryhill, No 15-CV-6308, 2017 WL 1097082, at *15 (E.D.N.Y. Mar. 23, 2017) (stating that an RFC determination indicates the "nature and extent" of a claimant's physical limitations and capacity for work activity on a regular and continuing basis) (citing 20 C.F.R. § 404.1545(b)).

"The Commissioner must consider objective medical evidence, opinions of examining or treating physicians, subjective evidence submitted by the claimant, as well as the claimant's background, such as age, education, or work history." Crocco, 2017 WL 1097082, at *15; see also Barry, 606 F. App'x at 622 n.1 ("In assessing a claimant's RFC, an ALJ must consider 'all of the relevant medical and other evidence,' including a claimant's subjective complaints of pain.") (quoting 20 C.F.R. § 416.945(a)(3)). Accordingly, the RFC assessment is based on a review of the entire record. See 20 C.F.R. § 404.1527(d)(2). An RFC determination must be affirmed on appeal when it is supported by substantial evidence in the record. Barry, 606 F. App'x. at 622 n.1.

Here, the assessment of the medical opinion evidence was governed by the "treating physician rule" in effect when Plaintiff filed his application. If a treating physician's opinion regarding the nature and severity of an individual's impairments is supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ will credit that opinion with "controlling weight."

8

20 C.F.R. § 404.1527(c)(2); Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). However, an ALJ may discount a treating physician's opinion when the opinion is conclusory, the physician fails to provide objective medical evidence to support his or her opinion, the opinion is inconsistent with the record, or the evidence otherwise supports a contrary finding. See 20 C.F.R. § 404.1527(c). An ALJ must provide "good reasons" not to grant controlling weight to a treating physician's opinion. See Schaal v. Apfel, 134 F.3d 496, 503–04 (2d Cir. 1998). And, when a treating physician's opinion is not given controlling weight, the ALJ should "comprehensively set forth reasons for the weight assigned" to that opinion, considering the factors identified in the SSA regulations. Halloran, 362, F3d at 33; see also 20 C.F.R. § 404.1527(c). These same factors are considered when evaluating other medical opinion evidence.

ALJ Weiss identified several "good reasons" why the opinion of Plaintiff's treating physician, Dr. Colasacco, was not entitled to controlling weight. (See Tr. 27–29.) Most critically, Dr. Colasacco stated that the significant limitations he placed on Plaintiff (that would preclude even sedentary work) were present from April 2005. (Tr. 28, 415–17.) ALJ Weiss highlighted that this was contradicted by Plaintiff's continued work as a Labeler, at the light to medium exertional level, until he lost his job in February 2014. (Tr. 28, 49–51, 415–17.) ALJ Weiss also explained in detail how Dr. Colasacco's treatment notes, and the latest objective medical tests, were inconsistent with the extreme functional limitations in Dr. Colasacco's opinion, additional good reasons not to grant his opinion controlling weight.[4] (Tr. 28–30.)

---

[4] Contrary to Plaintiff's contention, ALJ Weiss was not required to recontact Dr. Colasacco to explain inconsistencies in his records. The cases cited by Plaintiff to support his argument that an ALJ must recontact the treating physician when the ALJ determines the physician's opinion is inconsistent or lacks support rely on prior versions of 20 C.F.R. § 404.1512. (See Pl.'s Mem. 19 (citing cases with claims filed prior to March 2012).) The version in effect at the time Plaintiff filed his application for disability insurance benefits in February 2014 clarified that ALJs need not recontact a treating physician to resolve all inconsistencies. See How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10651-01 (Feb. 23, 2012); 20 C.F.R. § 404.1512(d) (effective March 26, 2012 to June 11, 2014); see also Micheli v. Astrue, 501 F. App'x 26, 29 (2d Cir. 2012) (summary order) ("The mere fact that medical evidence is conflicting or internally inconsistent does not mean that an ALJ is required to re-contact a treating physician.").

9

Though it was appropriate not to grant controlling weight to Dr. Colasacco's opinion, ALJ Weiss did not identify a particular weight to be applied to the opinion, merely indicating that it was "less persuasive." (Tr. 28.) The ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Social Security Ruling 96–2p, 1996 WL 374188, at *5 (July 2, 1996). See also Gagovits v. Colvin, No. 15-CV-3246(JS), 2016 WL 4491537, at *9 (E.D.N.Y. Aug. 25, 2016) (citing same). Failure to do so makes meaningful review by the Court difficult, but this error alone may not require remand—ALJ Weiss certainly considered and analyzed Dr. Colasacco's opinion. (See Tr. 27–29.) It is ultimately unnecessary to reach this question because, as explained, infra, the flaws in Dr. Shilling's opinion clearly warrant remand. Accordingly, on remand, the Commissioner should make it clear exactly what weight is given to Dr. Colasacco's opinion.

The testimony from Dr. Shilling, the non-examining medical expert who testified at the administrative hearing, mischaracterized certain medical records and appeared to ignore others. (Tr. 57–59.) However, ALJ Weiss gave great weight to Dr. Shilling's opinion that Plaintiff had no limitations sitting, standing, walking or lifting, and seemingly relied on it to discount Dr. Colasacco's opinion.[5] (See Tr. 27–29.) Given the factual errors in Dr. Shilling's testimony, his opinion does not constitute substantial evidence to support ALJ Weiss's RFC determination and remand is required.

---

[5] Plaintiff argues that a non-examining expert's opinion can never override one by a treating physician. However, the SSA regulations "permit the opinions of nonexamining sources to override treating sources' opinions, provided they are supported by evidence in the record." Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993). The only precedential case Plaintiff cites was limited by subsequent regulations, as recognized in Schisler, 3 F.3d at 568 (citing Hidalgo v. Bowen, 822 F.2d 294, 297 (2d Cir.1987)). The remaining District Court cases either rely on the older line of case law or are otherwise distinguishable. Regardless, as discussed, infra, Dr. Shilling's opinion is not clearly supported by evidence in the record.

Dr. Shilling's testimony and opinion primarily focus on Plaintiff's Bruce Protocol stress testing and explains what Plaintiff's "METs" scores mean.[6] (Tr. 57–59.) Dr. Shilling indicated that a METs score represents an individual's functional capacity, reporting that sitting in a chair is approximately 1 MET; climbing one flight of stairs is roughly 5 or 6 METs; and jogging 6 to 7 miles per hour is equivalent to approximately 12 METs. (Id.) Based on Dr. Shilling's testimony, ALJ Weiss indicated that Plaintiff's METs scores from 2009 to 2014 increased from 8 to 13, with 13 being "a normal healthy stress test." (Tr. 29, 57–59.) ALJ Weiss then relied considerably on Dr. Shilling's assessment that Plaintiff would have no restrictions sitting, standing, walking, or lifting to support his RFC of "light work." (Tr. 29.)

A review of the record shows that Dr. Shilling did not accurately and completely recount Plaintiff's METs scores. He identified Plaintiff's stress tests in May 2009, June 2011, April 2012, and May 2014, but skipped the May 2010 test completely. The May 2010 test indicates a "suboptimal exercise workload" was attempted, and the impression was "poor exercise tolerance." (Tr. 373.) Dr. Shilling provided no explanation of this result, nor how it affects his assessment of Plaintiff's functional capacity. Also, Dr. Shilling appeared to either ignore or mischaracterize the April 2012 test (which was 7 METs) when he opined that Plaintiff's tests were in the range of 8 to 13 METs. (Tr. 57–59, 373, 386.) Accordingly, Dr. Shilling's opinion is not entirely consistent with the record.

The results of Plaintiff's METs tests in 2010 and 2012—which were prior to the alleged disability onset date—may ultimately be irrelevant to Dr. Shilling's opinion of Plaintiff's

---

[6] ALJ Weiss properly assessed Dr. Schilling's qualification to give impartial testimony on this topic. Contrary to Plaintiff's argument, the fact that Dr. Shilling has a disciplinary history, provides these governmental assessments for compensation, and no longer sees patients, does not preclude him from opining on the meanings of objective qualitative tests in his area of expertise. An ALJ can still credit such an expert's opinion, particularly where, as here, the ALJ explicitly considered these issues in rendering his decision. (See Tr. 20–22.)

functional limitations. However, ALJ Weiss never questioned Dr. Shilling about this point at the hearing. Moreover, the fact that Dr. Shilling did not adequately analyze the medical records is particularly troublesome because he is a non-examining medical expert. His opinion relies solely on a review of the Plaintiff's medical record. Thus, for ALJ Weiss to afford "great weight" to Dr. Shilling's opinion, and seemingly more weight than the Plaintiff's treating physician, Dr. Shilling's opinion must, at the very least, accurately characterize the important medical records underlying his opinion.

Based on the foregoing, ALJ Weiss's RFC assessment was not supported by substantial evidence. On remand, should the Commissioner rely on an opinion from a non-testifying medical expert, that expert must consider all the relevant records and accurately characterize those records in rendering an opinion. Of course, "[t]he Commissioner remains free to direct such further medical examination and analysis as may be appropriate." Tarsia v. Astrue, 418 F. App'x 16, 19 (2d Cir. 2011) (summary order). The Commissioner must then assess the proper weight for each of the medical opinions in the record.[7]

The Court makes no finding regarding ALJ Weiss's initial credibility determination because it may change in light of any new evidence considered on remand, including any new medical opinions. Accordingly, on remand, the Commissioner should reassess Plaintiff's subjective complaints and, if necessary, Plaintiff's RCF, in light of the record as a whole.[8]

Further, as the Court is remanding this case for further consideration, Plaintiff's argument that the Appeals Council did not adequately explain its consideration of the two pieces of evidence

---

[7] The Court encourages the Commissioner to expressly address all the factors for evaluating opinion evidence in the SSA regulations. 20 C.F.R. § 404.1527.

[8] Again, the Commissioner is encouraged to expressly address all the factors for evaluating credibility identified in the SSA regulations. 20 C.F.R. § 404.1529(c)(3).

submitted on appeal is moot. On remand, the Commissioner should consider whether to accept, and how to weigh, this additional information.[9]

The Court will briefly address Plaintiff's argument that ALJ Weiss improperly concluded that Plaintiff's back impairment was not a severe impairment at step two of the analysis. (Pl.'s Mem. at 6–8.) An impairment is "not severe" if it does not significantly limit an individual's physical or mental capacity to perform basic work activities, *i.e.* walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. 20 C.F.R. § 404.1521. While step two is meant to weed out *de minimis* cases, Plaintiff bears the burden at this step, and he failed to establish that his back impairment was "severe" as defined in the regulations.

Indeed, ALJ Weiss conducted a detailed review of the limited evidence regarding Plaintiff's back impairment and determined that there was "no evidence to show that this impairment has significantly limiting effects on the claimant's functional capacity." (Tr. 25.) While ALJ Weiss briefly mentioned Plaintiff's claims of back pain in his step four analysis, it is not entirely clear that he considered this limitation when assessing Plaintiff's RFC. Accordingly, on remand, the Commissioner should specifically consider Plaintiff's back complaints as part of the revised step four analysis to be sure all of Plaintiff's impairments are considered in determining his RFC. See 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity.").

Finally, the Court will not grant Plaintiff's request to remand for calculation of benefits because, as discussed above, ALJ Weiss provided "good reasons" not to grant controlling weight to Dr. Colasacco's opinion. Accordingly, the record does not lead to the definitive conclusion that

---

[9] The Court notes that Dr. Colasacco's treatment records post-date ALJ Weiss's opinion and thus may not be relevant to the disability period. (See Tr. 10–16.)

Plaintiff is disabled. See <u>Williams v. Apfel</u>, 204 F.3d 48, 50 (2d Cir. 2000) (directing remand for further proceedings where the record was not entirely persuasive with respect to the Plaintiff's disability). Instead, the Court remands for further consideration consistent with this opinion.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiff's motion for judgment on the pleadings; DENIES the Commissioner's cross-motion; and REMANDS the case for further proceedings consistent with this opinion. On remand the Commissioner is directed to: (1) identify the specific weight applied to Dr. Colasacco's opinion; (2) consider and address any new evidence that is accepted into the record; (3) specifically address Plaintiff's back complaints as part the step four analysis; (4) assess Plaintiff's subjective complaints in light of the record as a whole; and (5) determine Plaintiff's RFC in light of the record as a whole. The Clerk of the Court is directed to enter judgment accordingly.

**SO ORDERED.**

Dated: February 15, 2019
Central Islip, New York

/s/ (JMA)
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE